UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAURICE FRANCES FOLEY,<br><br>      Petitioner,<br><br>v.<br><br>PAUL COPENHAVER,<br><br>      Respondent. | Case No.: 1:14-cv-00853-DAD-JLT<br><br>FINDINGS AND RECOMMENDATIONS DENYING PETITION FOR WRIT OF HABEAS CORPUS  (Doc. 1)<br><br>ORDER DIRECTING THAT OBJECTIONS BE FILED WITHIN TWENTY-ONE DAYS |

In this action, Petitioner challenges the loss of credits prison officials imposed after he was found guilty of a rules violation.  Petitioner claims he was deprived of due process because the hearing officer relied upon a description of the events rather than personally viewing a video of the incident.  Because the Court does not find a due process violation, it recommends the petition be **DENIED**.

**I.     PROCEDURAL HISTORY**

In 2007, Petitioner was charged with a prison rules violation; specifically, he was charged with violating of 28 C.F.R. § 541.3, Code 201 which prohibits fighting,.  (Doc. 13, Declaration of Mark Renda ("Renda Dec."), p. 3).  After he was found guilty of the offense, prison officials sanctioned him with the loss of 42 days' credits.  (Doc. 1).  At the time of the incident, Petitioner was serving a 330 month sentence following a plea of guilty to one count of Conspiracy to Distribute and Possess with Intent to Distribute 100 Kilograms or More of a Mixture and Substance Containing a Detectable Amount of Marijuana, in the United States District Court for the Western District of Pennsylvania.

(Id., p. 2).

## II.   JURISDICTION AND VENUE

Writ of habeas corpus relief extends to a person in custody under the authority of the United States. See 28 U.S.C. § 2241. While a federal prisoner who wishes to challenge the validity or constitutionality of his conviction must bring a petition for writ of habeas corpus under 28 U.S.C. § 2255, a petitioner challenging the manner, location, or conditions of that sentence's execution must bring a petition for writ of habeas corpus under 28 U.S.C. § 2241. See, e.g., Capaldi v. Pontesso, 135 F.3d 1122, 1123 (6th Cir. 1998); United States v. Tubwell, 37 F.3d 175, 177 (5th Cir. 1994); Kingsley v. Bureau of Prisons, 937 F.2d 26, 30 n.5 (2nd Cir. 1991); United States v. Jalili, 925 F.2d 889, 893-94 (6th Cir. 1991); Barden v. Keohane, 921 F.2d476, 478-79 (3rd Cir. 1991); United States v. Hutchings, 835 F.2d 185, 186-87 (8th Cir. 1987); Brown v. United States, 610 F.2d 672, 677 (9th Cir. 1990). A petitioner filing a petition for writ of habeas corpus under 28 U.S.C. § 2241 must file the petition in the judicial district of the petitioner's custodian. Brown, 610 F.2d at 677.

In this case, Petitioner contends that the Bureau of Prisons has violated his rights in the conduct of a prison disciplinary hearing that resulted in the loss of credits. Thus, Petitioner challenges the execution of his sentence rather than the imposition of that sentence. As a result, his petition is proper under 28 U.S.C. § 2241. In addition, because at the time of filing of the petition, Petitioner was incarcerated at the U. S. Penitentiary, Atwater, California, and that facility is within the Eastern District of California, this Court has jurisdiction to proceed to the merits of the petition. See U.S. v. Giddings, 740 F.2d 770, 772 (9th Cir. 1984).

## III.   EXHAUSTION

Federal prisoners must exhaust their administrative remedies before bringing a habeas petition pursuant to § 2241. E.g., Laing v. Ashcroft, 370 F.3d 994, 997 (9th Cir.2004); Martinez v. Roberts, 804 F.2d 570, 571 (9th Cir.1986). Under the doctrine of exhaustion, "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed remedy has been exhausted." Laing, 370 F.3d at 998 (quoting McKart v. United States, 395 U.S. 185, 193 (1969)). If a petitioner has not properly exhausted his claims, the district court, in its discretion, may either "excuse the faulty exhaustion and reach the merits, or require the petitioner to exhaust his administrative remedies before proceeding in

court." Brown v. Rison, 895 F.2d 533, 535 (9th Cir.1990). Respondent concedes that Petitioner has exhausted his administrative remedies as to all claims. (Doc. 13, p. 3).

## IV. DISCUSSION

### A. Factual Background

On May 31, 2007, at the United States Penitentiary, located at Atwater, California, the Control Center summoned all available officers to an altercation. (Renda Dec., p. 20). When he arrived, Senior Officer Lafferty observed Petitioner and another inmate, Colegrande, "striking each other in the head with closed fists." (Renda Dec., p. 18; 35). Officer Nicklin, Supervisor of Education, arrived shortly thereafter and maintained control of Petitioner until the Activities Lieutenant arrived. (Renda Dec., p. 20). Petitioner told Nicklin that "he was jumped by the other inmate and that he did not fight back because he did not want to get into any trouble." (Id.). Lt. Foreman stated that after the call went out regarding an "inmate on inmate fight," the two men were medically assessed. (Id., p. 21). Colegrande was treated for superficial abrasions to both knees, while Petitioner was medically assessed and treated for a contusion to his left forehead, a contusion to his left orbit, a laceration to the left side of his nose, and an abrasion to his right fifth finger. (Id.).

Lt. Novak later watched the videotape of the altercation and observed Petitioner and Colegrande "striking each other in the head with closed fists." (Renda Dec., p. 3). Prison officials issued Petitioner a rules violation and, after being advised of his rights, Petitioner was asked if the allegations in the rules violation were true. Petitioner responded, "No, I did not try to fight him. I tried to get him away from me." (Id., p. 4). Asked if he had kicked Colegrande, Petitioner said, "No, I don't think so. I tried to grab him to get close to him so he couldn't hit me." (Id.). Petitioner requested that the Disciplinary Hearing Officer ("DHO") review the videotape of the incident to confirm his story. (Id.).

At the hearing, Petitioner stated that "I didn't fight back. We were at the corner. I don't think [sic] the guard can see the scuffle that went on. I don't know what you're supposed to do when someone comes at you." (Id., p. 5). Petitioner denied making the potentially incriminating statement to Novak. (Id.). Petitioner requested that an inmate, Mark Krauss, be called as a witness; however, when called, Krauss testified that he was located a "couple doors down" from the incident and that he "didn't see anything." (Id.).

Based on the foregoing, DHO Renda found that Petitioner was guilty of fighting. (Id.). He based that decision on the description of the incident by the reporting staff members who witnessed it, memoranda from various correctional officers regarding the incident, written injury assessments of both Colegrande and Petitioner, the written summary of the videotape by Novak, statements made by Petitioner to Novak, and the statement made by Petitioner to Krauss. The notices and advisements the DHO gave to Petitioner conformed to standard legal requirements. (Id., pp. 1-6).

B.  Standard of Review.

Prisoners cannot be entirely deprived of their constitutional rights, but their rights may be diminished by the needs and objectives of the institutional environment. Wolff v. McDonnell, 418 U.S. 539, 555 (1974). Prison disciplinary proceedings are not part of a criminal prosecution, so a prisoner is not afforded the full panoply of rights in such proceedings. Id. at 556. Thus, a prisoner's due process rights are moderated by the "legitimate institutional needs" of a prison. Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir. 1989), citing Superintendent, etc. v. Hill, 472 U.S. 445, 454-455 (1984).

However, when a prison disciplinary proceeding may result in the loss of good time credits, due process requires that the prisoner receive: (1) advance written notice of at least 24 hours of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action. Hill, 472 U.S. at 454; Wolff, 418 U.S. at 563-567. In addition, due process requires that the decision be supported by "some evidence." Hill, 472 U.S. at 455, citing United States ex rel. Vatauer v. Commissioner of Immigration, 273 U.S. 103, 106 (1927).

> We hold that the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits. This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced...." United States ex rel. Vajtauer v. Commissioner of Immigration, 273 U.S., at 106, 47 S.Ct., at 304. Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board. See ibid.; United States ex rel. Tisi v. Tod, 264 U.S. 131, 133–134, 44 S.Ct. 260, 260–261, 68 L.Ed. 590 (1924); Willis v. Ciccone, 506 F.2d 1011, 1018 (C.A.8 1974).

Superintendent v. Hill, 472 U.S. at 455–56. The Constitution does not require that the evidence

logically preclude any conclusion other than the one reached by the disciplinary board; rather, there need only be some evidence in order to ensure that there was some basis in fact for the decision. Superintendent v. Hill, 472 U.S. at 457.

    C.    Analysis.

The gravamen of Petitioner's claim is that the DHO denied him due process rights when he refused to personally view the videotape as opposed to relying upon Novak's written description of the events depicted on it. (Doc. 1, p. 3). Petitioner argues that had the DHO reviewed the videotape itself, rather than a written description of it, he would have found that Colegrande attacked Petitioner and that he did not engage in a consensual fight. (Id.). Petitioner's argument is not persuasive.

First, as indicated previously, the Court is required to apply the deferential "some evidence" standard in evaluating the DHO's findings. Here, the "some evidence" standard was easily met by evidence other than the videotape itself, e.g., the medical reports showing that both Colegrande and Petitioner had bruises and cuts suggesting that both were actively engaged in fighting; multiple eyewitnesses who stated that Petitioner and Colegrande were punching each other in the head; and Petitioner's own account, which indicated he did not remember kicking Colegrande, but acknowledged trying to get close to him to keep from getting hurt.

Based on this evidence, the DHO's finding is based upon "some evidence." Additionally, Novak's written report of the contents of the videotape also supports the DHO's findings because it depicts both inmates engaged in fighting. Petitioner's contention that such a conclusion would be controverted by the DHO's personal viewing of the videotape, which Petitioner claims would show he was attacked, is mere speculation. He offers no witnesses or other evidence, apart from his self-serving comment to Novak that Colegrande attacked him without warning, that he was in fact attacked. Novak dutifully reported Petitioner's statement in his memorandum (Renda Dec., p. 22), as did Nicklin. Novak's written description of the video undoubtedly would have contained a similar observation confirming Petitioner's account had it been apparent from Novak's viewing of the video. Instead, Novak's summary indicates that Colegrande and Petitioner "appeared to engage in an argument with each other on the compound sidewalk" before striking "each other in the head with closed fists." (Renda Dec., p. 27). Although Petitioner's perspective may have been that he was attacked by

Colegrande, Novak's summary clearly indicates that the videotape captures the two men arguing and then fighting.

Moreover, as Respondent indicates, multiple cases have concluded that the hearing officer need not personally view the contents of a video in order to render a constitutionally valid finding of guilt. For example, in Alexander v. Schleder, 790 F.Supp.2d 1179, 1187 (E.D. Cal. 2011), the District Court considered a case in which the DHO declined to view videos, relying instead on reports of other officers that did in fact view the videos. Alexander, 790 F.Supp.2d at 1187.[1] The Court held that "[t]he DHO did not need to personally review the videotape." (Id.) The Court supported its reasoning by comparing a DHO's right to rely on "statements of adverse witnesses without Petitioner's cross-examination or confrontation" with a DHO's right to "similarly rely on the statements of a staff member regarding his review of potentially exculpatory videotape evidence." (Id.)  Concluding that due process does not require a DHO to personally watch a video of an incident, the Court held that a DHO can reasonably consider video evidence by relying on the written report of another officer that did view the video. A similar conclusion has been reached by multiple district courts since Alexander.  See, e.g., Greenburg v. Walsh, 2015 WL 1508697 (D.Nev. March 31, 2015); Oliver v. Babcock, 2014 WL 29666 (E.D. Cal. Jan. 3, 2014); Lopez v. Armstread, 2015 WL 2194163 (D. Nev. May 11, 2015); Quick v. Drew, 2012 WL 3000672 (D. South Carolina June 25, 2012).

However, even if the video could have been construed as showing Colegrande attacking Petitioner first, Petitioner has not shown that this would vindicate him of the charge of fighting or change the outcome of the disciplinary hearing.  28 C.F.R. § 541.3 lists "Prohibited acts and available sanctions."  Under "High Severity Level Prohibited Acts" is Code 201, which prohibits "fighting with another person."  Available sanctions for "high severity level" prohibited acts include, inter alia, forfeiture of earned credits of up to 60 days, disciplinary segregation for up to six months, a monetary fine, loss of privileges, loss of job, restriction to quarters, change of housing, and retardation or

---

[1] Although the case is not precedent, its reasoning is persuasive: "Given that a DHO can rely on the statements of adverse witnesses without Petitioner's cross-examination or confrontation, it follows that a DHO officer can similarly rely on the statements of a staff member regarding his review of potentially exculpatory videotape evidence." Alexander, 790 F.Supp.2d at 1187. Put another way, if the "diminished" constitutional protections afforded to prison inmates include eliminating the Sixth Amendment confrontation right altogether, it is difficult to see how the introduction of a written summary of a tape's content, rather than the tape itself, could possibly violate an inmate's due process rights under Hill.

rescission of parole recommendation date.

Nothing in those regulations indicates that a prisoner is *not* guilty of fighting if the other inmate throws the first punch and the prisoner merely responds in kind.  Petitioner does not appear to dispute that, however the altercation started and regardless of whomever started it, the incident rapidly developed into fight between the two men.  That being so, the evidence Petitioner believes the DHO should have seen on the videotape, i.e., that Colegrande was the initial aggressor, would not have exonerated him of the rules violation nor altered the outcome of the disciplinary process.  To the contrary, it appears from this record that the videotape itself was cumulative to Novak's written description of events contained on it and to the various eyewitness accounts, as well as to Petitioner's own statements.  Petitioner has not shown that the mere viewing of the videotape by the DHO would have, in any way, altered the outcome of the disciplinary proceedings.

Because some evidence supports the DHO's findings that Petitioner was "fighting with another person," as prohibited by state regulations and because Petitioner has not alleged that any other procedural irregularities existed in his case, no basis in fact or law exists to overturn the hearing officer's decision.  Thus, the Court will recommend that the petition be denied with prejudice.

**V.     RECOMMENDATION**

Accordingly, the Court **RECOMMENDS** that the Petition for Writ of Habeas Corpus be **DENIED** with prejudice on its merits.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to this case, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  **Within 21 days** after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and **filed within 10 days** (plus three days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).

///

///

The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:  **May 12, 2016**                              **/s/ Jennifer L. Thurston**
                                                                    UNITED STATES MAGISTRATE JUDGE